IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAMELOT PAPER, INC., an Illinois corporation,<br><br>     Plaintiff,<br><br> v.<br><br>FRANK AMBROSE, INC., a Michigan corporation, d/b/a Ambrose International; FRANK AMBROSE, INC., a Michigan corporation, d/b/a Florida Paper, Inc., d/b/a Arthur's Paper; FLORIDA PAPER, INC., a Florida corporation, d/b/a Arthur's Paper; and ROBERT AMBROSE, Individually,<br><br>     Defendants. | No. 08 CV 4139<br><br>Judge Holderman<br>Magistrate Judge Cole |

### DEFENDANTS' MOTION TO DISMISS DEFENDANTS PURSUANT TO FED. R. CIV. P. 12(b)(2)

Defendants Frank Ambrose, Inc., Florida Paper, Inc., and Robert Ambrose move to dismiss Plaintiff Camelot Paper, Inc.'s complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) for the reasons set forth in the accompanying brief.

               Respectfully submitted,

               Miller Canfield, Paddock and Stone, P.L.C.

               s/W. Scott Turnbull
               W. Scott Turnbull  (ARDC No. 6257848)
               Attorneys for Defendants
               150 W. Jefferson, Suite 2500
               Detroit, MI  48226
               (313)  963-6420
               turnbull@millercanfield.com

               Robert T. Zielinski (ARDC No. 06183981)
               Cara M. Houck (ARDC No. 06239153)
               225 W. Washington Street, Ste 2600
               Chicago, Illinois, 60606
Dated:  August 25, 2008.       (312) 460-4200

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAMELOT PAPER, INC., an Illinois corporation,<br><br>                  Plaintiff,<br><br>  v.<br><br>FRANK AMBROSE, INC., a Michigan corporation, d/b/a Ambrose International; FRANK AMBROSE, INC., a Michigan corporation, d/b/a Florida Paper, Inc., d/b/a Arthur's Paper; FLORIDA PAPER, INC., a Florida corporation, d/b/a Arthur's Paper; and ROBERT AMBROSE, Individually,<br><br>                  Defendants. | No. 08 CV 4139<br><br>Judge Holderman<br>Magistrate Judge Cole |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS
<u>DEFENDANTS PURSUANT TO FED. R. CIV. P. 12(b)(2)</u>**

Defendants Frank Ambrose, Inc., Florida Paper, Inc., and Robert Ambrose, by their attorneys Miller, Canfield, Paddock and Stone, P.L.C., and in support of their motion to dismiss Plaintiff Camelot Paper, Inc.'s complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), state as follows:

**<u>INTRODUCTION</u>**

Defendants Florida Paper, Inc. ("Florida Paper") d/b/a as Arthur's Paper, is a Florida corporation that buys and resells paper products. Florida Paper placed orders for paper with Plaintiff Camelot Paper, Inc. ("Camelot Paper") an Illinois corporation for delivery to Florida Paper's customers in Florida and Texas.

Camelot Paper sent invoices to Arthur's Paper in Miami, Florida. *See* Complaint at Exhibit A. Camelot Paper also had purported Terms and Conditions that has a hand written

notation of "Arthur's Paper" on it that requires payment within 30 days of the date of the invoice. *See* Complaint at Exhibit B.  This dispute arises from Florida Paper's alleged failure to remit payment of the amounts on the invoices to Camelot Paper.

The complaint and these two exhibits do not show sufficient minimum contacts with Illinois by any of the Defendants.  Illinois courts hold that "an out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts." *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir. 1997); *Mellon First United Leasing v. Hansen*, 301 Ill. App. 3d 1041, 1048, 705 N.E.2d 121 (1998) ("Where a nonresident merely enters into a contract with a resident of the forum state, this fact is not sufficient by itself to subject the nonresident to the *in personam* jurisdiction of the forum state").  Additionally, the goods sold were for use in Florida and Texas, not Illinois – "the possession and control by a nonresident of Illinois equipment for use in a foreign jurisdiction does not confer jurisdiction on Illinois." *Mellon,* 301 Ill. App. 3d at 1047.

Furthermore, this dispute concerns Arthur's Paper's order of paper from Florida and its alleged failure to remit payment in Florida of the invoiced amounts.  Camelot Paper's cause of action does not "directly arise out of the contacts between the defendant[s] and the forum" because the contract was formed in Florida and the alleged breach occurred in Florida. *RAR, Inc,.* 107 F.3d 1272, 1277.

Finally, Camelot Paper's invoices and its purported Terms and Conditions do not make any reference to Robert Ambrose or Frank Ambrose, Inc. ("Frank Ambrose").  The only reason Camelot Paper named Frank Ambrose and Robert Ambrose as defendants was the possible prospect of an unsatisfied judgment against Arthur's Paper.  Such an alter ego claim has been

specifically rejected by the Seventh Circuit Court of Appeals. *Sea-Land Services, Inc. v. Pepper Source*, 941 F.2d 519 (7th Cir. 1991).

## STATEMENT OF FACTS

Florida Paper, Inc. is a Florida corporation with its principal place of business located at 3200 N.W. 119 St. Miami, Florida 33167. It does business under the assumed name of Arthur's Paper. See Exhibit 1, Declaration of George M. Arthur. Arthur is an employee of Florida Paper in its Miami office and was directly involved in the transactions at issue. *Id*. at ¶3. Camelot Paper solicited business from Florida Paper through mail offerings. *Id*. at ¶4. Arthur did not travel to Illinois to inspect the paper at issue. *Id*. at ¶5. He merely placed telephone orders for a quantity of paper at Camelot Paper's agreed price with the instructions to have the paper shipped directly to Florida Paper's customers Motivating Graphics in Fort Worth, Texas and Alliance Converting in Medley, Florida. *Id*. at ¶6.

Arthur did not negotiate Camelot Paper's Terms and Conditions. *Id*. at ¶8. Camelot Paper issued invoices to Florida Paper, 3200 N.W. 119 St. Miami, Florida 33167. See Complaint at Exhibit A. The invoices directed Arthur's Paper to "remit" payment to Camelot Paper, Inc. at "Dept CB17488, Palatine, Il 60055-7488." *Id*.

Neither Frank Ambrose, Inc. nor Robert Ambrose was involved in the purchase of the paper, Camelot Paper's invoices, or Camelot Paper's purported Terms and Conditions. Ex. 1, Arthur Decl. at ¶10. Camelot Paper's invoices and its purported Terms and Conditions do not make any reference to Robert Ambrose or Frank Ambrose, Inc.

Camelot Paper treated Arthur's Paper separately and distinctly from Ambrose International. Camelot Paper admits that Arthur's Paper and Ambrose International each have separate accounts on file with it. Compl. at ¶35. Camelot Paper also admits that it had different

3

relationships with Ambrose International allegedly dating back to January 1998 and a new relationship with Arthur's Paper that started in October 2003. Compl. at ¶¶ 17 and 19.

## STANDARD OF REVIEW

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving that personal jurisdiction exists. *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 939 (7th Cir. 2000). In a case based on diversity of citizenship, a federal district court sitting in Illinois has personal jurisdiction over a nonresident defendant only if an Illinois court would have jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir. 1997).

An Illinois court would have personal jurisdiction over a nonresident defendant only where it is permitted by state statutory law, state constitutional law, and federal constitutional law. *Id.* at 1276. Illinois' long-arm statute extends personal jurisdiction to the limit allowed under the Illinois Constitution and the Constitution of the United States. 735 ILCS 5/2-209(c); *RAR, Inc.,* 107 F.3d at 1276. The court in *RAR, Inc.* stated that "the court's inquiry collapses into a state and federal constitutional inquiry." *RAR, Inc.,* 107 F.3d at 1276.

Under the Illinois Constitution, jurisdiction is to be "asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 715 (7th Cir. 2002) (quoting *Rollins v. Ellwood,* 141 Ill. 2d 244, 565 N.E.2d 1302, 1316, 152 Ill. Dec. 384 (Ill. 1990)). The Seventh Circuit Court of Appeals has stated that since there is little guidance available regarding the reach of the Illinois Due Process Clause, courts typically look to the federal Due Process Clause for guidance. *See, e.g., id.* at 715-16; *RAR,* 107 F.3d at 1276-77.

Under the United States Constitution, the Due Process Clause of the Fourteenth Amendment limits a state court's power to assert personal jurisdiction over a nonresident defendant. *RAR, Inc.,* 107 F.3d at 1277. A defendant must have "certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945) (citation omitted).

Personal jurisdiction may be specific or general. *See RAR, Inc.,* 107 F.3d at 1277. There is no basis for general jurisdiction in this case. Specific personal jurisdiction exists where the suit arises out of, or is related to, the defendant's minimum contacts with the forum state. *Hyatt Int'l Corp.,* 302 F.3d at 716. A defendant is subject to specific personal jurisdiction if he "purposefully established 'minimum contacts' in the forum State" such that he "should reasonably anticipate being haled into court" in the forum state. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985). Under Illinois and federal case law, Defendants have not purposefully established sufficient minimum contacts in Illinois such that they "should reasonably anticipate being haled into court" in Illinois.

## ARGUMENT

**A.     No Basis for Personal Jurisdiction Over Florida Paper, Inc.**

The allegation that Florida Paper bought paper from Camelot Paper and failed to pay for it does not establish minimum contacts. The Seventh Circuit Court of Appeals has held that "an out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts." *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir. 1997).[1]

---

[1] Even the transmission of purchase orders to Illinois would not establish the required minimum contacts. See also *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 2004 U.S. Dist. LEXIS 1529, *10 (N.D. ILL. February 5, 2004) (stating that "merely sending purchase orders and payments to Illinois is not sufficient to support a finding of personal jurisdiction.").

5

In *Mellon First United Leasing v. Hansen*, 301 Ill. App. 3d 1041, 705 N.E.2d 121 (1998), the court held that when a "nonresident merely enters into a contract with a resident of the forum state, this fact is not sufficient by itself to subject the nonresident to the in *personam* jurisdiction of the forum state." *Id*. at 1048. In *Mellon*, the defendant, a California resident, entered into a mailing equipment lease agreement with an Illinois company but stopped making payments. The negotiations took place in California and her only contacts with Illinois were that the lease documents were sent to an Illinois office for approval and the defendant sent the payments to Illinois. "Defendant never set foot in Illinois. Her only connection with Illinois included correspondence--forwarding the documents, presumably through the California vendor, for approval in Illinois and sending payments to an Illinois office." *Mellon,* 301 Ill. App. 3d at 1049. The court found these actions to be insufficient to satisfy the 'minimum contacts' due process standard. *Mellon,* 301 Ill. App. 3d at 1049; *Commercial Coin Laundry Systems v. Loon Investments, LLC,* 871 N.E.2d 898, 905 (Ill. App. Ct. 2007) (applying *Mellon* court's reasoning and holding that "the simple mailing of rent payments to or from Illinois is not enough to confer jurisdiction on Illinois").

In *Mellon*, the court set forth the following standard for evaluating minimum contacts with Illinois to establish personal jurisdiction:

> Thus, 'if the nonresident buyer is a passive party who merely places an order by mail, telephone, or to a salesperson and accepts the seller's price' through some form of solicitation, 'the courts of the seller State will not be able to exercise *in personam* jurisdiction over the buyer.' *Chalek*, 193 Ill. App. 3d at 773. 'If the buyer departs from a passive role by dictating or vigorously negotiating contract terms or by inspecting production facilities' in Illinois, the buyer may be characterized as an active buyer subject to personal jurisdiction in this state. *Chalek*, 193 Ill. App. 3d at 773.

*Id*. at 1048-49.

6

In this case, the transactions took place in Florida when Florida Paper accepted Camelot Paper's offer to sell paper at a given price. See Exhibit 1, Declaration of George M. Arthur. As a seller of paper, Camelot Paper would send offerings to Florida Paper in Florida. *Id*. at ¶4. Mr. Arthur merely placed an order for a quantity of paper at Camelot Paper's agreed price. *Id*. at ¶6. He did not go to Illinois to inspect the paper. *Id*. at ¶5. He did not negotiate the terms and conditions with Camelot Paper. *Id*. at ¶8. The paper was not used in Illinois but in Florida and Texas. *Id*. at ¶6. Florida Paper's contacts with Illinois were via telephone calls to Camelot Paper in Illinois. *Id*. These are not minimum contacts to confer personal jurisdiction to an Illinois court over Florida Paper. *See Bolger v. Nautica International, Inc.*, 861 N.E.2d 666 (Ill. App. Ct. 2007) (insufficient minimum contacts between the Florida defendant and Illinois to confer personal jurisdiction).

Illinois courts have held that the cause of action must "directly arise out of the contacts between the defendant and the forum" in order for an Illinois court to have personal jurisdiction over Florida Paper. *RAR, Inc,*. 107 F.3d 1272, 1277. "Using a loose causal connection between a suit and a defendant's forum contacts as the basis for personal jurisdiction does not comport with fair play and substantial justice." *Id*. "Specific jurisdiction is not appropriate 'merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must *directly arise* out of the specific contacts between the defendant and the forum state.'" *Id*.

In this case, the cause of action occurred in Florida. It arose out of Camelot Paper's solicitation of paper sales in Florida and Florida Paper's agreement in Florida to purchase paper. Finally, Florida Paper's alleged failure to make payment on Camelot Paper's invoices that were sent to Florida. Florida Paper's contractual obligation was to "remit" payment to Camelot Paper,

7

Inc. at "Dept CB17488, Palatine, Il 60055-7488". *See* Invoices attached to the Complaint. Florida Paper had no other contractual obligations. This case does not arise out of any contacts between Florida Paper and Illinois. *Isringhausen v. Prime Contractors and Associates, Inc.*, 883 N.E.2d 594 (Ill. App. Ct. 2008) (affirming trial court's finding that Florida defendant did not have sufficient minimum contacts with Illinois in a breach of contract claim involving its retention of a $42,500 construction-management fee in Florida).

B.     **No Basis for Personal Jurisdiction Over Frank Ambrose, Inc. and Robert Ambrose.**

Camelot Paper attempts to do an end run around personal jurisdiction requirement by asserting a purported alter ego claim against Frank Ambrose and Robert Ambrose. If Florida Paper does not have sufficient minimum contacts with Illinois to confer jurisdiction over it by an Illinois court, then neither would the court have personal jurisdiction over Frank Ambrose and Robert Ambrose.

Camelot Paper treated Arthur's Paper separately and distinctly from Ambrose International. Camelot Paper admits that Arthur's Paper and Ambrose International each have separate accounts on file with it. Compl. at ¶35. Camelot Paper also admits that it had different relationships with Ambrose International allegedly dating back to January 1998 and a new relationship with Arthur's Paper that started in October 2003. Compl. at ¶¶ 17 and 19. Camelot Paper's allegation at paragraph 18 that Ambrose International purchased Arthur's Paper is false. See Exhibit 2, Declaration of Jeffrey Wagenberg at ¶8.

Frank Ambrose and Robert Ambrose had no contacts with Illinois, let alone sufficient minimum contacts with Illinois to confer jurisdiction over them by an Illinois court. Frank Ambrose did not place orders for the paper products at issue in this case. *Id*. at ¶3. Frank Ambrose did not receive invoices for the paper products at issue in this case. *Id*. at ¶4. Frank Ambrose is not a party to Camelot Paper's purported Terms and Conditions attached at Exhibit B

8

to the Complaint. *Id*. at ¶5. Likewise, Robert Ambrose did not place orders for paper, receive invoices, or was a party to or sign Camelot Paper's purported Terms and Conditions. See Exhibit 3, Declaration of Robert Ambrose at ¶¶3-5.

Camelot Paper's invoices and its purported Terms and Conditions do not make any reference to Robert Ambrose or Frank Ambrose. Frank Ambrose is a separate and distinct corporate entity – a Michigan corporation with its principal place of business located in Troy, Michigan. Ex. 2 at ¶2. Frank Ambrose does business under various assumed names including Heritage Papers, Merchantnet, Ambrose International, and Paper Express. *Id*. at ¶6. Frank Ambrose does not do business under the assumed name of Arthur's Paper. *Id*. at ¶7.

Frank Ambrose and Florida Paper have separate books and records systems. *Id*. at ¶9. They respect the corporate form and comply with the corporate formalities. Frank Ambrose and Florida Paper have separate bank accounts and separate account numbers. *Id*. at ¶12. They do not commingle funds. Frank Ambrose and Florida Paper have separate principal places of business. *Id*. at ¶13. Frank Ambrose and Florida Paper have separate accounts payable records. Florida Paper's accounts payable representative is outsourced to a different business entity. *Id*. at ¶¶10-11. Frank Ambrose does not treat the assets of Florida Paper as its own. Finally, Robert Ambrose is not the sole officer of Frank Ambrose and Florida Paper. *Id*. at ¶14.

"Under Illinois law, a corporation is a legal entity separate and distinct from its shareholders, directors and officers, and, generally, from other corporations with which it may be affiliated." *Van Dorn Co. v. Future Chemical & Oil Corp.*, 753 F.2d 565, 569 (7th Cir. 1985). "Under Illinois law, **separate corporate existence is the rule** to which piercing the corporate veil is a stringently applied exception." *Chicago Florsheim Shoe Store Co. v. Cluett, Peabody & Co., Inc.*, 826 F.2d 725, 728 (7th Cir. 1987) (emphasis added). In *Sea-Land Services, Inc. v.*

9

*Pepper Source*, 941 F.2d 519 (7th Cir. 1991), the court stated that a corporate entity will be disregarded and the veil of limited liability pierced when two requirements are met:

> First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.
> *Id*. at 520 (citing *Van Dorn Co. v. Future Chemical and Oil Corp.*, 753 F.2d 565 (7th

Cir. 1985). In *Sea-Land Services*, the court found that the first requirement had been met, but the second requirement regarding the sanctioning of fraud or injustice had not been satisfied. The court stated:

> The prospect of an unsatisfied judgment looms in every veil-piercing action; why else would a plaintiff bring such an action? Thus, if an unsatisfied judgment is enough for the 'promote injustice' feature of the test, then every plaintiff will pass on that score, and . . . [the two-part test] collapses into a one-step 'unity of interest and ownership' test. . . . We cannot abide such a result . . . .
>
> The Sea-Land court continued: Courts that properly have pierced corporate veils to avoid 'promoting injustice' have found that, unless it did so, some 'wrong' **beyond a creditor's inability to collect would result**: the common sense rules of adverse possession would be undermined; former partners would be permitted to skirt the legal rules concerning monetary obligations; a party would be unjustly enriched; a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities; or an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset free corporation would be successful.

*Id*. at 524 (emphasis added). *See Facilitec Corporation v. Grease Stopper, Inc.*, 2002 U.S. Dist. LEXIS 2178 (N.D. Ill. February 13, 2002) (finding no personal jurisdiction over a Florida corporation under the alter ego theory).

There is no basis to support claims against Frank Ambrose and Robert Ambrose in this case. The only reason Camelot Paper named Frank Ambrose and Robert Ambrose as defendants was the possible prospect of an unsatisfied judgment. This cause of action against Frank

10

Ambrose and Robert Ambrose has been specifically rejected by the Seventh Circuit Court of Appeals and the complaint against them should likewise be dismissed.

## CONCLUSION

Defendants respectfully request that this Honorable Court dismiss the complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) because Defendants do not have sufficient minimum contacts with Illinois

Respectfully submitted,

Miller Canfield, Paddock and Stone, P.L.C.

s/W. Scott Turnbull
W. Scott Turnbull  (ARDC No. 6257848)
Attorneys for Defendants
150 W. Jefferson, Suite 2500
Detroit, MI  48226
(313) 963-6420
turnbull@millercanfield.com

Robert T. Zielinski (ARDC No. 06183981)
Cara M. Houck (ARDC No. 06239153)
225 W. Washington Street, Ste 2600
Chicago, Illinois, 60606

Dated:  August 25, 2008.                    (312) 460-4200

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2008, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing upon all ECF filing participants.

By:   s/W. Scott Turnbull
W. Scott Turnbull
Miller Canfield, Paddock and Stone, P.L.C.
Attorneys for Defendant
150 West Jefferson, Suite 2500
Detroit, MI  48226-4415
(313) 963-6420
turnbull@millercanfield.com

DELIB:3002609.3\112112-00021

11

## INDEX OF EXHIBITS

1. Declaration of George M. Arthur, Sr.;

2. Declaration of Jeffrey Wagenberg;

3. Declaration of Robert D. Ambrose

DELIB:3006709.1\112112-00021

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

CAMELOT PAPER, INC.,
an Illinois corporation,

        Plaintiff

v.

FRANK AMBROSE, INC., a Michigan corporation,
d/b/a Ambrose International; Frank Ambrose, Inc., a
Michigan corporation, d/b/a Florida Paper, Inc., d/b/a
Arthur's Paper; Florida Paper, Inc., a Florida
corporation, d/b/a Arthur's Paper; and Robert
Ambrose, Individually,

        Defendants.

Case No. 08-CV-4139

Assigned Judge: Holderman

Designated
Magistrate Judge: Cole

## DECLARATION OF GEORGE M. ARTHUR, Sr.

George M. Arthur, Sr. states and declares that:

1. I am a resident of Florida over 18 years of age and an employee of Florida Paper, Inc. and competent to testify to the following:

2. Florida Paper, Inc. is a Florida corporation with its principal place of business located at 3200 N.W. 119 St. Miami, Florida 33167.

3. I work in Florida Paper's Miami, Florida office.

4. Camelot Paper solicited business from Florida Paper through mail offerings.

5. I did not travel to Illinois to inspect the paper at issue.

6. I merely placed a telephone order for a quantity of paper at Camelot Paper's agreed price with the instructions to have the paper shipped directly to Florida Paper's customers Motivating Graphics in Fort Worth, Texas and Alliance Converting in Medley, Florida.

7. Camelot Paper issued invoices to Arthur's Paper at 3200 N.W. 119 St. Miami, Florida, 33167.

8. I did not negotiate Camelot Papers' Terms and Conditions.

9. Arthur's Paper is an assumed name used by Florida Paper, Inc.

10. Neither Frank Ambrose, Inc. nor Robert Ambrose was involved in the purchase of the paper, Camelot Paper's invoices, or Camelot Paper's purported Terms and Conditions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*George M. Arthur*
George M. Arthur, Sr.

Executed on August 22, 2008.

DELIB:3004814.1\112112-00021

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CAMELOT PAPER, INC.,<br>an Illinois corporation,<br><br>        Plaintiff<br>v.<br><br>FRANK AMBROSE, INC., a Michigan corporation,<br>d/b/a Ambrose International; Frank Ambrose, Inc., a<br>Michigan corporation, d/b/a Florida Paper, Inc., d/b/a<br>Arthur's Paper; Florida Paper, Inc., a Florida<br>corporation, d/b/a Arthur's Paper; and Robert<br>Ambrose, Individually,<br><br>        Defendants. | Case No. 08-CV-4139<br><br>Assigned Judge: Holderman<br><br>Designated<br>Magistrate Judge: Cole |

## DECLARATION OF JEFFREY WAGENBERG

Jeffrey Wagenberg states and declares that:

1. I am a resident of Michigan over 18 years of age and the Chief Operating Officer of Frank Ambrose, Inc., and I am an officer of Florida Paper, Inc. and competent to testify to the following:

2. Frank Ambrose, Inc. ("Frank Ambrose") is a Michigan corporation with its principal place of business located in Troy, Michigan.

3. Frank Ambrose did not place orders for the paper products at issue in this case.

4. Frank Ambrose did not receive invoices for the paper products at issue in this case.

5. Frank Ambrose is not a party to Camelot Paper's purported Terms and Conditions attached at Exhibit B to the Complaint.

6. Frank Ambrose does business under various assumed names including Heritage Papers, Merchantnet, and Ambrose International.

7. Frank Ambrose does not do business under the assumed name of Arthur's Paper.

8. Frank Ambrose is not the parent company to Florida Paper, Inc.

9. Frank Ambrose and Florida Paper have separate books and records systems.

10. Frank Ambrose and Florida Paper have separate accounts payable records.

11. Florida Paper's accounts payable representative is outsourced to a different business entity.

12. Frank Ambrose and Florida Paper have separate bank accounts and separate account numbers.

13. Frank Ambrose and Florida Paper have separate principal places of business and use different mailing addresses.

14. Robert Ambrose is not the sole officer of Frank Ambrose and Florida Paper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*Jeffrey Wagenberg*

Executed on August 22, 2008.

DELIB:3004903.1\112112-00021

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CAMELOT PAPER, INC., an Illinois corporation, | Case No. 08-CV-4139 |
| Plaintiff | Assigned Judge: Holderman |
| v. | |
| FRANK AMBROSE, INC., a Michigan corporation, d/b/a Ambrose International; Frank Ambrose, Inc., a Michigan corporation, d/b/a Florida Paper, Inc., d/b/a Arthur's Paper; Florida Paper, Inc., a Florida corporation, d/b/a Arthur's Paper; and Robert Ambrose, Individually, | Designated Magistrate Judge: Cole |
| Defendants. | |

## DECLARATION OF ROBERT D. AMBROSE

Robert Ambrose states and declares that:

1. I am a resident of Michigan over 18 years of age and the Chief Executive Officer of Frank Ambrose, Inc., and competent to testify to the following:

2. Frank Ambrose, Inc. ("Frank Ambrose") is a Michigan corporation with its principal place of business located in Troy, Michigan.

3. I did not place orders for the paper products at issue in this case.

4. I did not receive invoices for the paper products at issue in this case.

5. I am not a party to Camelot Paper's purported Terms and Conditions attached at Exhibit B to the Complaint.

6. I am not the sole officer of Frank Ambrose and Florida Paper.

7. I did not provide any assurances to Camelot Paper that the subject invoices would be paid on behalf of Frank Ambrose, Florida Paper, or myself.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                                                           Robert D. Ambrose

Executed on August 22, 2008.

DELIB:3006047.1\112112-00021